## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        CR. No. 1:20-1211 JCH

DAVID MADRIGAL,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant David Madrigal's *Motion to Suppress Evidence and Statements* [Doc. 46]. The Government filed a response [Doc. 51], and on December 8, 2021, the Court held an evidentiary hearing on the motion. Defendant was present and represented by counsel. At the hearing, the Court heard the testimony of witnesses and considered the exhibits admitted into evidence. The issue at the heart of the motion is whether the police initially detained Madrigal without reasonable suspicion. After considering all of the evidence and the arguments made by the parties, the Court concludes that the motion should be denied.

## FINDINGS OF FACT

Based on the evidence presented at the hearing, the Court makes the following factual findings.

On March 23, 2020, a black 2013 Hyundai Elantra with New Mexico license plate ANSX03 was reported stolen from Albuquerque, New Mexico. Because the car was equipped with a GPS device, it was soon located at 2109 Twisted Juniper Road SE, in Rio Rancho, New Mexico. Thus, just one hour after the car was reported stolen, the Rio Rancho Police Department dispatched

Officers Jason Winkler, Matt Phelps, and Juan Baca to that address, where they discovered the stolen Hyundai parked in the driveway.

Prior to that day, Officer Baca had some familiarity with both the Defendant and the home at 2109 Twisted Juniper Road. Baca had met Defendant personally during the course of his police work, and as a result of those encounters he knew that Defendant spent time at that home, which was Defendant's sister's. Further, during conversations with other officers and through information shared at police briefings, Baca knew that other officers believed that Defendant was involved in property crimes like auto theft and that he had a particular fondness for stealing Hyundais. Further, the dispatcher communicating with the officers informed them that there was a lot of police history at that address, including notes about the frequent presence of Angel Godinez, who was known to be a gang member, a drug user, and an irrational person, as well as the nephew of the Defendant. The dispatcher also told the officers that there was a history of welfare checks at 2109 Twisted Juniper Road. Officer Winkler asked the dispatcher to check whether Godinez was incarcerated. After a short pause, she informed the officers that Godinez was in the custody of the U.S. Marshals. Thus, Baca and the others knew that it was highly unlikely that Godinez was on the premises.

At the time of the encounter with Defendant, the three officers had formed a perimeter and were waiting for two more officers to arrive. Baca suspected that the car thief was in the house because the car had been reported stolen only an hour earlier, and the officers had already confirmed that the black Hyundai parked in the driveway of 2109 Twisted Juniper Road was the stolen car they were looking for. Officer Baca was standing in the front yard of the house west of 2109 Twisted Juniper Road. Officers Phelps and Winkler were standing in the yard of the home directly east of 2109 Twisted Juniper Road. The weather was sunny. Officer Baca had been there

2

for about one minute when Defendant came out of the house at 2109 Twisted Juniper Road carrying a trash bag. Defendant walked west toward a large trash bin sitting near the driveway. At his appearance, Baca recognized the Defendant and hopped over a low wall separating the two yards. Baca called out to Defendant. "Hey David, how you doing? What is going on?" Defendant responded, "I did nothing wrong!" Baca asked Defendant if he knew anything about the Hyundai Elantra parked in the driveway, and Defendant responded that he did not and started to back away. At this point, Baca issued his first command, instructing Defendant to turn around and face the garage door so that Baca could pat him down. Defendant refused, and Baca grabbed his arm. Defendant pulled his arm away and repeated that he had done nothing wrong. Defendant then turned as though to walk back toward the door of the house. At this time, Baca was joined by Phelps and Winkler, who helped to handcuff and pat down Defendant as he struggled. They found contraband, including a gun, on Defendant's person. The officers placed Defendant under arrest, at which point he made self-incriminating statements.

## **DISCUSSION**

A.    Fourth Amendment Law

To determine the reasonableness of a warrantless seizure and accompanying search in the absence of probable cause, the Supreme Court's seminal decision in *Terry v. Ohio* instructs us to ask "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 20 (1968). Consistent with *Terry*, a police officer may briefly detain an individual suspected of criminal activity if the officer has reasonable suspicion based on articulable facts, together with rational inferences to be drawn therefrom, that criminal activity is afoot. *See United States v.*

*Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002). Additionally, *Terry* permits the officer to conduct a protective frisk of such individual if the officer reasonably believes he might be armed and dangerous. *Id*. "The stop and the search are independent actions, and each requires its own justification." *United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010) (citing *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009)).

"Reasonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Treto-Haro*, 287 F.3d 1000, 1004 (10th Cir. 2002) (internal quotation marks omitted). The detaining officer must be able to articulate, in an objective sense, "something more than an 'inchoate and unparticularized suspicion or hunch'" that a defendant was engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27). The circumstances necessary to arouse reasonable suspicion fall "considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). In fact, the Supreme Court has recognized "there could ... be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam). Similarly, the Tenth Circuit has noted that "[r]easonable suspicion may exist even where it might be more likely than not that the individual is not involved in any illegality." *United States v. Guardado*, 699 F.3d 1220, 1224 (10th Cir. 2012) (internal quotation marks omitted).

B.    <u>Analysis</u>

The Court concludes that Officer Baca did have reasonable suspicion that Defendant had committed the crime of stealing the Hyundai Elantra, and therefore the initial detention was valid. There are several facts that support reasonable suspicion. First, Officer Baca knew Defendant and was aware of his reputation for being involved in property crimes generally, as well as thefts of

4

Hyundai vehicles specifically. Although Officer Baca did not have first-hand knowledge of these things, other officers had mentioned it to him during briefings and during discussions with undercover officers. Defendant argues that in formulating a reasonable suspicion, an officer should not be permitted to rely upon such hearsay from fellow officers unless it is supported by other indicia of reliability, such as police reports or arrest records. This argument is unconvincing. The Supreme Court long ago rejected the contention that reasonable cause for a temporary detention "can only be based on the officer's personal observations, rather than on information supplied by another person." *Adams v. Williams*, 407 U.S. 143, 147 (1972)). In particular, the Eighth Circuit has stated that "an officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation to provide justification for a stop." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003). Tenth Circuit has permitted reliance on hearsay of another officer to form the basis of reasonable suspicion or probable cause in other contexts. *United States v. Merritt*, 695 F.2d 1263, 1270 (10th Cir. 1982), cert. denied, 461 U.S. 916 (1983). *See United States v. Mathis*, 357 F.3d 1200, 1206 (10th Cir. 2001) ("We therefore conclude that the magistrate's reliance on hearsay information as a basis for probable cause to support the first search warrant was not in error."); *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 n. 3 (10th Cir. 1992) ("Although this statement is hearsay, and perhaps multiple hearsay, hearsay maybe used to establish probable cause."). Therefore, the Court finds that it was permissible for Officer Baca to rely upon the hearsay statements he had heard from other Rio Rancho police officers.

Second, the stolen vehicle was, in fact, a Hyundai Elantra, and therefore it fit the profile of the type of vehicle Officer Baca reasonably believed Defendant was inclined to steal. Third, the stolen Elantra was parked in the driveway of an address where Officer Baca knew Defendant had

relatives and where he could often be found. The Elantra was not abandoned on the street, but rather backed into the driveway of the home, as though the person who parked it there had intended to continue to possess it and perhaps drive it away. Fourth, it had been only one hour since the car had been reported stolen. Because so little time had passed, it was reasonable to infer that the thief was still in possession of it. And, as the car did not appear to have been abandoned in a random location, it was reasonable to infer that the thief was still nearby. Fifth, the only other known suspect who spent time at that address, Angel Godino, was incarcerated and could not have committed the theft. Sixth, Defendant—with his known interest in Hyundai vehicles—was present on the scene. Finally, as soon as Defendant saw Officer Baca, he immediately became defensive, proclaiming his innocence of any wrongdoing, which Officer Baca found suspicious.

The Court concludes that the foregoing constitutes a particularized and objective basis for suspecting that Defendant had committed the crime of stealing the Hyundai Elantra. This was more than just a hunch; rather, the circumstances strongly supported a reasonable belief that Defendant was involved in the theft and that a brief detention was warranted in order to investigate further. Thus, the initial detention was supported by reasonable suspicion, and the later arrest was not tainted fruit of the poisonous tree. Defendant's motion to suppress will be denied.

**IT IS THEREFORE ORDERED** that Defendant David Madrigal's *Motion to Suppress Evidence and Statements* [Doc. 46] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**